UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FRANK ABEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. |
| | ) |
| PHILIPS NORTH AMERICA LLC, | ) |
| PHILIPS HOLDING USA, INC., AND | ) |
| PHILIPS RS NORTH AMERICA LLC, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

The plaintiff, Frank Abel ("Mr. Abel"), by counsel, for his Complaint against the defendants Philips North America LLC ("Philips NA"), Philips Holding USA, Inc. ("PHUSA"), and Philips RS North America LLC ("Philips RS") (collectively referred to as "Philips" or the "Defendants"), state as follows:

## INTRODUCTION

1. This is a product liability action related to recalled Philips breathing machines that exposed users, including Mr. Abel, to harmful chemicals that caused adverse health consequences.

2. Philips manufactures, markets, sells, and distributes a variety of products for sleep and home respiratory care, including a variety of Continuous Positive Airway Pressure ("CPAP") and BiLevel Positive Airway Pressure ("BiPAP") devices for patients with obstructive sleep apnea, as well as other ventilator devices for patients with respiratory conditions.

3. On or about June 14, 2021, Philips issued a recall notification for many of its CPAP and BiPAP devices as well as a number of its ventilator devices (the "Recalled Devices").

4. In its recall notification, Philips advised of potential health risks related to the sound abatement foam used in the Recalled Devices that could degrade and expose users to foam particles

and emissions that contain harmful chemicals. The adverse health consequences resulting from exposure to these chemicals can include irritation, inflammatory response, headaches and dizziness, asthma, adverse effects or organs, and toxic and carcinogenic effects.

5. Mr. Abel was prescribed and purchased one of the Recalled Devices, a Dream Station device, serial number H236 507 80237 D (the "Recalled Device"), to treat his sleep apnea.

6. Mr. Abel has used the Recalled Device since February 2019 and continues to use the device.

7. As a direct and proximate result of Mr. Abel's use of the Recalled Device, Mr. Abel has suffered serious and substantial adverse health consequences as well as other physical, emotional, and financial injuries.

## PARTIES, JURISDICTION, AND VENUE

8. Mr. Abel is an adult resident and citizen of the state of Indiana, residing in Starke County, Indiana.

9. Mr. Abel was prescribed the use of the Recalled Device while a resident of Starke County, Indiana, he purchased the Recalled Device in Indiana, and the majority of use of the use of the Recalled Device occurred in Indiana.

10. Defendant Philips NA is a Delaware corporation with its principal place of business located at 3000 Minuteman Road, Andover, Massachusetts 01810. Upon information and belief, Philips NA is a wholly owned subsidiary of Royal Philips. Upon information and belief, Philips NA manages the operation of Royal Philips' various lines of business, including Philips RS, in North America. The sole member of Philips NA is PHUSA, which is a Delaware corporation. Philips NA may be served through its registered agent, Corporation Service Company, at 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

11. Defendant PHUSA is a Delaware corporation with its principal place of business located at 222 Jacobs Street, 3rd Floor, Cambridge, Massachusetts 02141. Upon information and belief, PHUSA is a holding company that is the sole member of Defendant Philips NA. PHUSA may be served through its registered agent, Corporation Service Company, at 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

12. Defendant Philips RS is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15206. Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics"). Royal Philips acquired Respironics in 2008. Upon information and belief, Philips RS may be served through its registered agent, Corporation Service Company, at 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

13. Philips NA, PHUSA, and Philips RS are hereinafter collectively referred to as "Philips" or the "Defendants."

14. Upon information and belief, Philips has purposefully availed itself of the benefits of doing business in Indiana through manufacturing, designing, labeling, marketing, distributing, supplying, and selling products for the treatment of obstructive sleep apnea, including the Recalled Device, and by placing such products into the stream of commerce for those purposes.

15. For the same reasons, Philips has sufficient "minimum contacts" with Indiana that subjecting it to personal jurisdiction in Indiana does not offend traditional notions of fair play and substantial justice.

16. Each of the Defendants acted in concert with the others in the designing, manufacturing, marketing, promoting, advertising, and selling of devices for the treatment of obstructive sleep apnea, including the Recalled Device. Defendants engaged in a joint undertaking

for profit, rendering them jointly liable to the Plaintiffs. Defendants acted in all respects as agents or apparent agents of one another or were mere alter egos or instrumentalities of each other.

17. As set forth below, Mr. Abel suffered injuries in Starke County, Indiana from use of the Recalled Device within Indiana.

18. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) based on complete diversity of citizenship between Plaintiff and all Defendants. The amount in controversy exceeds $75,000, exclusive of interest and costs.

19. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## BACKGROUND

20. Philips manufactured, marketed, sold, and distributed a lineup of CPAP and BiPAP devices as well as ventilator devices under its "Sleep & Respiratory Care" portfolio. These devices are designed to assist individuals with a number of sleep, breathing, and other respiratory conditions, including sleep apnea.

21. Philips sought and obtained Food and Drug Administration ("FDA") approval to market the Recalled Devices, including the Recalled Device, under Section 510(k) of the Medical Device Amendment to the Food, Drug, and Cosmetics Act. Section 510(k) allows marketing of medical devices if the device is deemed substantially equivalent to other legally marketed predicate devices marketed prior to May 28, 1976. No formal review for safety or efficacy is required.

### A. Continuous Positive Airway Pressure ("CPAP") Therapy

22. CPAP therapy is a common nonsurgical treatment primarily used to treat sleep apnea. CPAP therapy typically involves the use of a nasal or facemask device and a CPAP device helps individuals breathe by increasing the air pressure in an individual's throat.

4

23. Sleep Apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle. These interruptions, called apneas, are caused when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen from reaching the individual's lungs which can cause a buildup of carbon dioxide.

24. If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from sleep so that the individual's airway can reopen. Often these interruptions are so brief that the individual will not remember them. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health. CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

**B.    Bi-Level Positive Airway Pressure ("BiPAP") Therapy**

25. BiPAP therapy is a common alternative to CPAP therapy for treating sleep apnea. Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway. BiPAP is distinguishable from CPAP therapy, however, because BiPAP devices deliver two alternating levels of pressurized air into a person's airway rather than the single continuous level of pressurized air delivered by a CPAP device. Inspiratory positive airway pressure assists a person as a breath is taken in while expiratory positive airway pressure is applied to allow a person to comfortably breathe out.

**C.    Philips' Sleep & Respiratory Care Devices Were Endangering its Users**

26. On April 26, 2021, as part of its Quarterly Report for the first quarter of 2021, Philips disclosed for the first time that device user reports had led to a discovery that the type of polyester-based polyurethane ("PE-PUR") sound abatement foam Philips used to minimize noise

in several CPAP and BiPAP respirators posed health risks to its users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."

27. On June 14, 2021, as a result of extensive ongoing review following the announcement on April 26, 2021, Philips issued a recall notification for specific affected devices.

28. In its recall notification, Philips identified examples of potential risks which include exposure to degraded sound abatement foam particles and exposure to chemical emissions from the sound abatement foam material.

29. Philips reported that, based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of potential adverse health consequences, some of which are transient and others of which can be permanent or even life-threatening. These adverse health consequences include irritation (skin, eye, and respiratory tract), inflammatory response, headaches and dizziness, asthma, adverse effects to other organs (e.g. kidneys and liver), and toxic carcinogenic affects.

30. On June 14, 2021, Philips also issued a brief report titled "Clinical Information for Physicians." In this report, Philips disclosed that "[l]ab analysis of the degraded foam reveals the presence of potentially harmful chemicals including: Toluene Diamine, Toluene Diisocyanate [and] Diethylene glycol."

31. In the same report, Philips also disclosed that lab testing performed by and for Philips had also identified the presence of Volatile Organic Compounds ("VOCs") which may be emitted from the sound abatement foam component of the affected devices. "VOCs are emitted as gases from the foam included in the [Recalled Devices] and may have short- and long-term adverse health effects. Standard testing identified two compounds of concern may be emitted from the

6

foam that are outside of safety thresholds.  The compounds identified are the following:  Dimethyl Diazine [and] Phenol, 2,6-bis (1,1-dimethylethyl)-4-(1-methylpropyl)."

### D. Philips' Recalled Devices

32. In total, Philips targeted "[b]etween 3 million and 4 million" devices with its recall.

33. The Recalled Devices include many different models of CPAP and BiPAP machines, including DeamStation, C-Series, SystemOne, Dorma, Trilogy, and A-Series.

34. Philips issued the following advice to patients using any of the Recalled Devices:

> For patients using BiLevel PAP and CPAP devices:  Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks.
>
> For patients using life-sustaining mechanical ventilator devices:  DO NOT discontinue or alter prescribed therapy, without consulting physicians to determine appropriate next steps.

### E. Philips Unreasonably Delayed its Recall

35. The FDA has identified the recall "as a Class I recall, the most serious type of recall" and has advised that the "[u]se of these devices may cause serious injuries or death."

36. Upon information and belief, Philips knew of the potential risks long before it issued its recall.

37. Specifically, due to user reports and other testing performed by and on behalf of Philips, it was aware of the degradation of the PE-PUR sound abatement foam used in the Recalled Devices.  Despite this knowledge, Philips continued to manufacture, market, and sell the Recalled Devices for a significant period of time.

38. Once Philips initiated the recall, its notification efforts were "insufficient" and left a "significant portion" of users unaware of potential adverse health consequences of continued use of the Recalled Devices, prompting a notification order from the FDA.

7

39. As a result of the delayed and inadequate recall, Philips continued to unreasonably profit from the sale of the Recalled Devices and put users at further risk of adverse health consequences.

## PLAINTIFF FRANK ABEL

40. On or around February 26, 2019 Mr. Abel purchased the Recalled Device.

41. Since February 26, 2019, Mr. Abel used the Recalled Device daily to treat his sleep apnea.

42. Mr. Abel used the Recalled Device in accordance with the guidelines, manual, and instructions for use set forth by Philips.

43. Mr. Abel used the Recalled Device for a purpose for which it was marketed, designed, and intended.

44. Mr. Abel used the Recalled Device in accordance with the directions and instructions issued by his physician who prescribed the use of the Recalled Device.

45. As a result using the Recalled Device, Mr. Abel suffered injuries, including but not limited to high blood pressure, increased risk of cancer and other health issues, mental and emotional suffering, anxiety, and mental and physical pain and suffering.

46. Mr. Abel has suffered damages as a result, including such as medical and other expenses, future medical and other expenses, permanent injury, great mental suffering, agony, and anguish as well as physical pain and suffering, loss of social and recreational pleasures, and loss of wages and earning capacity.

47. These injuries would not have occurred but for the defective nature of the Recalled Device and Philips' wrongful conduct.

## CAUSES OF ACTION

### COUNT I
### PRODUCT DEFECTIVE DUE TO DEFECTIVE DESIGN
### IND. CODE § 34-20-1-1 *ET SEQ.*

48. Mr. Abel incorporates the foregoing allegations of the Complaint as if fully set forth herein.

49. Philips owed a duty to Mr. Abel to use reasonable care to design and produce a product that is reasonably safe for its intended, anticipated, or reasonably foreseeable use.

50. Philips breached its duty to Mr. Abel by, as set forth above, failing to manufacture its product so as to eliminate any unreasonable risk of foreseeable injury and failing to manufacture a product reasonably fit for its intended, anticipated, or reasonably foreseeable use.

51. Philips sold, leased, or otherwise put the product into the stream of commerce in a defective condition that was unreasonably dangerous to users or consumers.

52. The product was in a condition that was not contemplated by reasonable persons among those considered expected users or consumers of the product and that was unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption.

53. Philips knew or should have known about the risk of harm based on the scientific, technical, or medical information reasonably available at the time the specific unit of the product left its control.

54. Mr. Abel is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition.

55. Philips is engaged in the business of selling the product.

56. The product was expected to and did reach Mr. Abel without substantial alteration

in the condition in which the product was sold by Philips.

57. Mr. Abel suffered injuries, including high blood pressure and an increased risk of cancer, the effects of which may be permanent and lasting.

58. Mr. Abel has suffered damages as a direct and proximate cause of the actions and omissions of Phillips , including but not limited to medical and other expenses, future medical and other expenses, great mental suffering, agony, and anguish as well as physical pain and suffering, loss of social and recreational pleasures, and loss of wages or earning capacity.

WHEREFORE, the plaintiff, Mr. Abel, respectfully requests that the Court enter judgment in his favor and against the Defendants in an amount that will reasonably compensate him for his damages, and for all other just and proper relief.

## COUNT II
### PRODUCT DEFECTIVE DUE TO MANUFACTURING DEFECT
### IND. CODE § 34-20-1-1 *ET SEQ.*

59. Mr. Abel incorporates by reference each of the foregoing allegations in this Complaint as if fully set forth herein.

60. At all times herein mentioned, the Defendants were involved in researching, designing, developing, manufacturing, testing, selling, and distributing the Recalled Devices, including the Recalled Device, which are defective and unreasonably dangerous.

61. The Recalled Device was expected to and did reach Plaintiff without a substantial change in its condition.

62. The finished Recalled Device deviated, in terms of construction and quality, from the specifications or planned output in a manner that made it unreasonably dangerous.

63. The Recalled Device prescribed to and used by Mr. Abel was defective in its manufacture when it left the hands of Defendants in that it deviated from product specifications,

posing a serious risk that the device would result in serious complications.

64. At all relevant times, the Recalled Device was defectively manufactured by Defendants in that its design and formulation is more dangerous than what an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

65. At all relevant times, Defendants actively deceived users that their use of the Recalled Devices posed safety risks that far outweighed any benefits.

66. Furthermore, the Recalled Devices, including the Recalled Device, were defectively manufactured in that the PE-PUR foam comprising part of the devices can degrade into particles that enter the devices' air pathway and can off-gas certain chemicals. Mr. Abel and other similarly situated consumers were unknowingly subjected to receiving different doses of toxins, carcinogens, and other deleterious components and contaminants when using the Recalled Devices.

67. Without limitation, the Defendants breached their duty to exercise reasonable care in manufacturing, assembling, inspecting, and packaging the Recalled Devices by their (a) failure to follow Good Manufacturing Practices ("GMPs"); (b) failure to adequately inspect and test the Recalled Devices during the manufacturing process; (c) failure to adequately determine and test the integrity of PE-PUR foam and its qualities, especially after the devices have aged; and (d) failure to adequately determine/test the purity of airflow through the Recalled Devices' airway, especially after the devices have aged.

68. A reasonable manufacturer under the same or similar circumstances would have implemented appropriate manufacturing procedures to better ensure the quality of their devices.

69. Mr. Abel was injured as a direct and proximate result of Defendants' failure to use reasonable care in the manufacturing, assembling, inspecting, and packaging of the Recalled

Device as described herein.

WHEREFORE, the plaintiff, Mr. Abel, respectfully requests that the Court enter judgment in his favor and against the Defendants in an amount that will reasonably compensate him for his damages, and for all other just and proper relief.

## COUNT III
## PRODUCT DEFECTIVE DUE TO INADEQUATE WARNINGS OR INSTRUCTION
## IND. CODE § 34-20-1-1 *ET SEQ.*

70. Mr. Abel incorporates the foregoing allegations of the Complaint as if fully set forth herein.

71. Phillips owed a duty to Mr. Abel to properly package or label the product to give reasonable warnings of danger about the product or give reasonably complete instructions on proper use of the product. Ind. Code § 34-20-4-2.

72. Phillips breached its duty to Mr. Abel by, among other things, failing to provide adequate warnings or instructions.

73. Phillips, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer

74. As a result of Phillips' failure to provide adequate warnings, Mr. Abel suffered injuries including high blood pressure and an increased risk of cancer, the effects of which may be permanent and lasting.

75. Mr. Abel has suffered damages as a direct and proximate cause of the actions and omissions of Phillips, including but not limited to medical and other expenses, future medical and other expenses, great mental suffering, agony, and anguish as well as physical pain and suffering, loss of social and recreational pleasures, and loss of wages or earning capacity.

WHEREFORE, the plaintiff, Mr. Abel, respectfully requests that the Court enter judgment

in his favor and against the Defendants in an amount that will reasonably compensate him for his damages, and for all other just and proper relief.

## COUNT IV
## BREACH OF IMPLIED WARRANTY
## IND. CODE § 34-20-1-1 *ET SEQ.*

76. Mr. Abel incorporates the foregoing allegations of the Complaint as if fully set forth herein.

77. At all relevant times, Defendants, through their advertising and promotional materials, expressly and impliedly warranted and affirmed that the Recalled Devices' purpose was to offer a reasonably safe treatment for sleep apnea and similar health problems.

78. Defendants touted the Recalled Devices as safe, despite knowingly having never adequately researched or tested the devices to assess their safety before placing the devices on the market and promoting them to consumers.

79. Defendants intended to make Mr. Abel and the public believe the Recalled Devices were safe.

80. Defendants impliedly warranted that the products at issue in this Complaint and its component parts were merchantable and fit for the ordinary and intended purposes for which they are used.

81. Defendants breached their implied warranty of merchantability since the Recalled Devices were defective when created and designed, and do not conform with the promises represented on their labels.

82. Defendants failed to comply with merchantability requirements, as the Recalled Devices do not achieve the ordinary purposes they advertise: a healthy treatment for respiratory conditions such as sleep apnea.

83. At all relevant times, Defendants had knowledge of the hazards and health risks posed by the Recalled Devices when used.

84. At all relevant times, Defendants willfully failed to disclose the defects and health risks of the Recalled Devices to Mr. Abel and the consuming public.

85. Mr. Abel relied to his detriment on the information publicized by Defendants.

86. Mr. Abel was a foreseeable user of the products at issue in this Complaint.

87. At all times relevant to this Complaint, Mr. Abel was in privity with Defendants.

88. Mr. Abel used the product at issue in this Complaint for its ordinary and intended purpose.

89. As a direct and proximate result of the Defendants' breach of implied warranty, Mr. Abel has suffered harm, damages, economic loss, pain and suffering, and medical treatment and medical expenses.

WHEREFORE, the plaintiff, Mr. Abel, respectfully requests that the Court enter judgment in his favor and against the Defendants in an amount that will reasonably compensate him for his damages, and for all other just and proper relief.

## COUNT V
## BREACH OF EXPRESS WARRANTY
## IND. CODE § 34-20-1-1 *ET SEQ.*

90. Mr. Abel incorporates the foregoing allegations of the Complaint as if fully set forth herein.

91. Defendants expressly warranted by affirmation, promise, description, and sample to Mr. Abel and Mr. Abel's healthcare providers that the products at issue in this Complaint were of a quality and character suitable for safe use by Mr. Abel.

92. Such representations by Defendants were meant to and did induce Mr. Abel to

purchase the Recalled Device.

93. The Recalled Device did not conform to the representations made by Defendants.

94. Defendants breached the express warranty it provided with the Recalled Device.

95. As a result of Defendants' conduct, Mr. Abel suffered injuries and damages as alleged herein.

96. As a direct and proximate result of the Defendants' breach of warranty, as set forth above, Mr. Abel has suffered harm, damages, economic loss, pain and suffering, and medical treatment and medical expenses.

WHEREFORE, the plaintiff, Mr. Abel, respectfully requests that the Court enter judgment in his favor and against the Defendants in an amount that will reasonably compensate him for his damages, and for all other just and proper relief.

## COUNT VI: FRAUD

97. Mr. Abel incorporates the foregoing allegations of the Complaint as if fully set forth herein.

98. At all relevant times, Defendants designed manufactured, assembled, inspected, tested, packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the Recalled Devices into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to consumers, such as Mr. Abel.

99. Defendants knowingly made fraudulent statements regarding the safety of the Recalled Devices and the substantial health risks associated with using the devices, all the while intending to deceive Mr. Abel and the general public.

100. At all reasonable times, Defendants fraudulently misrepresented the Recalled Devices as safe, when in fact the devices posed unreasonable risks of substantial bodily injury.

101. Due to these and other features, the Recalled Devices are not fit for their ordinary, intended use as treatment devices for sleep apnea and similar respiratory conditions.

102. Defendants touted the Recalled Devices as safe, despite a failure to adequately research or test the devices to assess their safety prior to marketing and promoting their use.

103. Defendants further falsely represented the nature and risks associated with the Recalled Devices, and their marketing and strategy regarding the same, in general statements to the media, general public, and federal agencies.

104. Defendants' fraudulent misrepresentations and omissions were material facts that were essential to Mr. Abel's decision to purchase the Recalled Device.

105. Mr. Abel was unaware that Defendants were knowingly concealing these material facts, which Mr. Abel relied on to his detriment.

106. By knowingly misrepresenting this material information, Defendants breached their duty to protect Mr. Abel and consumers.

107. Mr. Abel justifiably relied to his detriment on Defendants' fraudulent statements. Had Mr. Abel been adequately informed of the material facts concealed from his regarding the safety of the Recalled Device, and not intentionally deceived by Defendants, he would not have purchased or used the Recalled Device.

108. As a direct and proximate result of Defendants' fraudulent misrepresentations, Mr. Abel suffered and continues to suffer from the injuries and damages for which they is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorney fees.

WHEREFORE, the plaintiff, Mr. Abel, respectfully requests that the Court enter judgment in his favor and against the Defendants in an amount that will reasonably compensate him for his

damages, and for all other just and proper relief.

## COUNT VII: FRAUDULENT CONCEALMENT

109. Mr. Abel incorporates the foregoing allegations of the Complaint as if fully set forth herein.

110. At all relevant times, Defendants designed, manufactured, assembled, inspected, tested, packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the Recalled Devices into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to those that used the devices, such as Mr. Abel.

111. Defendants had a duty to disclose material facts about the Recalled Devices that would substantially affect Mr. Abel's and the general public's use when purchasing the devices.

112. At all reasonable times, Defendants fraudulently misrepresented the Recalled Devices as safe, when in fact the devices posed unreasonable risks of substantial bodily injury. Therefore, the devices are not fit for their ordinary and intended uses.

113. Defendants actually knew about all of the above facts.

114. At all relevant times, Defendants fraudulently and deceptively concealed their failure to adequately research or test the Recalled Devices to assess their safety before marketing to susceptible users.

115. Defendants further falsely represented the nature and risks associated with the Recalled Devices, and their marketing and strategy regarding the same, in general statements to the media, general public, and federal agencies.

116. Defendants' misrepresentations and omissions were material facts that were essential to Mr. Abel's decision making when purchasing and using the Recalled Device.

117. Mr. Abel was completely unaware that Defendants were concealing these material

facts.

118.  Defendants intentionally deceived and concealed material information concerning the safety of the Recalled Devices from Mr. Abel and the general public, which had a direct impact on Mr. Abel's and consumers' health and wellbeing.

119.  Mr. Abel relied to his detriment on Defendants' fraudulent concealment and omissions. Had Mr. Abel been adequately informed of the material facts regarding the safety of the Recalled Devices, and not intentionally deceived by Defendants, he would not have purchased, used, or been injured by the Recalled Device.

120.  As a direct and proximate result of Defendants' fraudulent concealment, Mr. Abel suffered and continues to suffer from the injuries and damages for which he is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorney fees.

WHEREFORE, the plaintiff, Mr. Abel, respectfully requests that the Court enter judgment in his favor and against the Defendants in an amount that will reasonably compensate him for his damages, and for all other just and proper relief.

## PUNITIVE DAMAGES

121.  Mr. Abel incorporates the foregoing allegations of the Complaint as if fully set forth herein.

122.  Defendants' conduct described herein consisted of oppression, fraud, and malice, and was done with advance knowledge, conscious disregard of the safety of others, and ratification by Defendants' officers, directors, and managing agents.

123.  Despite their knowledge of the Recalled Devices' propensity to cause serious injuries, Defendants chose profits over the safety of American citizens suffering with sleep apnea

when they sought to create and market a device posing significant health risks.

124. Despite having substantial information about the Recalled Devices' serious and unreasonable side effects, Defendants intentionally and recklessly failed to adequately warn the public, physicians, and the medical community.

125. Further, despite having substantial information about the Recalled Devices' serious and unreasonable side effects, Defendants failed to make the decision to pull the devices from the market after receiving indications and after receiving reports from consumers who were experiencing serious injuries associated with the use of the devices.

126. Defendants downplayed and recklessly disregarded their knowledge of the defective nature of the Recalled Devices' potential for causing serious injuries.

127. Defendants chose to do nothing to warn the public about serious and undisclosed side effects with the Recalled Devices.

128. Defendants recklessly failed to warn and adequately instruct physicians, including Plaintiff's physician, regarding the increase in reports from consumers who were experiencing serious injuries associated with the use of the Recalled Devices.

129. Consequently, Defendants are liable for punitive damages in an amount to be determined by the jury.

WHEREFORE, the plaintiff, Mr. Abel, respectfully requests that the Court enter judgment in his favor and against the Defendants for punitive damages, and for all other just and proper relief.

## **DEMAND FOR JURY TRIAL**

Mr. Abel demands a trial by jury on all counts and as to all issues.

Respectfully submitted,

*/s/Ryan G. Milligan*
Ryan G. Milligan (28691-71)
James P. Barth (33951-64)
Peter D. Hamann (34615-45)
PFEIFER MORGAN & STESIAK LLP
53600 N. Ironwood Drive
South Bend, IN 46635
Telephone: 574-272-2870
RMilligan@pilawyers.com
JBarth@pilawyers.com
PHamann@pilawyers.com

*Counsel for the plaintiff,*
*Frank Abel*